TOWNSHIP OF NINETY-SIX, ABBEVILLE COUNTY, S. C., v. FOLSOM.

(Circuit Court of Appeals, Fourth Circuit. May 3, 1898.)

No. 217.

RECITALS IN MUNICIPAL BONDS—ACTION BY BONA FIDE HOLDER—ESTOPPEL.
Where the recitals contained in bonds issued by a township in payment of its subscription to the stock of a railroad company show a full and complete compliance with the law in pursuance of which they were issued, such township is estopped from setting up a defense inconsistent with such recitals, when sued on such bonds by a bona fide holder for value, who purchased without notice of defect or irregularity in their issue, and in reliance upon such recitals and the validity of the bonds.

Appeal from the Circuit Court of the United States for the District of South Carolina.

This action was brought by George W. Folsom against the township of Ninety-Six, in Abbeville county, S. C., to recover upon past-due coupons from bonds issued by the township. The court directed a verdict in favor of plaintiff, and defendant appeals.

Geo. M. Trenholm, for plaintiff in error.
H. J. Haynsworth and Lewis W. Parker, for defendant in error.

Before GOFF, Circuit Judge, and JACKSON and PAUL, District Judges.

JACKSON, District Judge. This is an action brought to recover certain past-due coupons from bonds issued by the township of Ninety-Six, in the county of Abbeville, state of South Carolina, in payment of a subscription to the Greenville & Port Royal Railroad Company, the charter of which, by subsequent legislation, was amended, and the name changed to the Atlantic, Greenville & West-

ern Railway Company. Authority was conferred by the act of the general assembly of the state of South Carolina entitled "An act to charter the Greenville & Port Royal Railroad," approved December 23, 1882, upon any city, town, county, or township interested in the construction of the road, to subscribe to its capital stock such sum as the majority of the voters voting at an election held for that purpose may authorize the county commissioners or proper authorities of such city, town, county, or township to subscribe, which subscription shall be made in 7 per cent. coupon bonds, payable in such installments as the county commissioners or proper authorities of such city, town, county, or township shall determine, and to be received by said company at par. Coupled with this power to subscribe was a provision that no election shall be held in any of the towns, cities, or townships in said counties unless one-half of the owners of the real estate situate in such town or city, who live therein, shall first petition for an election on the subject of subscribing to the capital stock as hereinbefore provided, and no subscription shall be made by any of the towns and cities until the conditions of this proviso have been complied with. There were other provisions in the act, which we deem it at this time unnecessary to notice. The act amending this act was passed by the general assembly on December 24, 1885.

It is alleged in the complaint, by the plaintiff in the action: That in pursuance of said acts the board of county commissioners of Abbeville county on March 25, 1886, duly executed and issued the bonds of said township, with attached interest coupons at the rate of 7 per cent. per annum, aggregating $20,800, as authorized by said acts, and in the denomination provided therein. Said bonds were numbered on their face, and they and the coupons attached were made payable at the First National Bank of Charleston, S. C., and after the obligatory part thereof they recite and conclude as follows:

"Whereas the township of Ninety-Six, in the county of Abbeville, of the state of South Carolina, by virtue of an act of the general assembly of the said state, approved on the 23rd day of December, A. D. 1882, amended Dec., A. D. 1885, and entitled 'An act to charter the Greenville & Port Royal Railroad Company,' amended to 'Atlantic, Greenville & Western Railway Company,' and empower certain counties and townships to issue bonds in subscription for the common stock of the said railroad company, has subscribed for twenty thousand and eight hundred dollars of the common stock of said railroad company: Now, in consideration thereof, and in conformity with the provisions of said act, this bond, being one of the others, aggregating twenty thousand and eight hundred dollars, is issued by the board of county commissioners for Abbeville county, state of South Carolina, who, in testimony whereof and by authority of said act, have officially executed this bond, and caused the same to be countersigned by their clerk, and the seal of the said county of Abbeville to be hereunto affixed, at Abbeville, in said county, on this, the 25th day of March, A. D. 1886."

That the plaintiff, relying upon the recitals contained in said bonds, and upon their being legal and valid obligations of said township, in the year 1886 became the purchaser of bonds, with coupons attached, being a portion of said issue, numbering 1 to 37, inclusive. That the plaintiff is the owner and holder of 119 coupons, since detached from said bonds, made and issued by the defendant

87 F.—20

and purchased by the plaintiff; all being alike. The following is the form. of one of the coupons:

"3　　　　　　　The Township of Ninety-Six　　　　　　$70
In the County of Abbeville,
State of South Carolina,

will pay the bearer, at the office of the First National Bank of Charleston, S. C., seventy dollars on the first day of January, 1889, being the annual interest on bond No. 28."

The defendant filed an answer to plaintiff's demand, and denied generally all knowledge or information in reference to the issue of these bonds, and required strict proof thereof, and especially denied that the bonds. and coupons described in plaintiff's declaration were duly executed and issued by the county commissioners of Abbeville county, pursuant to said act, for the reason that there was "no petition by one-half of the owners of real estate situate and living in said township for an election on the subject of subscribing to the capital stock of said company, as required by said acts; nor was there any written application by one-half of the qualified voters of the defendant township who were freeholders therein, specifying the amount to be subscribed by said township, as required by said acts; nor was there notice of a resolution of the board of county commissioners fixing the amount proposed co be subscribed by the chairman of said board, in a newspaper published in the county of Abbeville for forty days next previous to the election, as required by said acts; nor were the said county commissioners authorized to subscribe for stock in said railroad, nor to issue bonds in payment therefor, by a majority of the voters of said township, voting at an election held for that purpose." It is alleged as a third defense that the bonds are not the bonds of the defendant; that they are not under the seal of the defendant or its authorized officers; and that the coupons sued on and alleged to have been cut from bonds issued by the defendant were never executed by the county commissioners of Abbeville county, but were executed by a person having no power or authority to do so under said acts. Upon this state of the pleadings issue. was joined, and the case was heard before a jury, and a verdict was found for the plaintiff by the direction of the court. To the rulings of the court upon the trial of the cause the defendant took several exceptions, and has assigned 10 different grounds of error on the part of the trial judge. In the view we take of this case, we deem it unnecessary to discuss and consider the first 9 of these assignments, for the reason that we have reached the conclusion that there is really but one ground to be considered in this case, which is embraced in assignment 10, and that is, "Did the court err in directing a verdict for the plaintiff?" It is not denied that the bonds in controversy were issued under an act of the general assembly of South Carolina passed in 1882 and amended in 1885, as a subscription to the common stock of the Greenville & Port Royal Railroad Company and the Atlantic, Greenville & Western Railway Company. The fact is disclosed that the bonds in question were acquired by the defendant

in error for a valuable consideration, and without any notice of any irregularity or fraud in regard to their issue.

This brings us to the consideration of the real question in the case, and that is whether the township of Ninety-Six is not estopped by the recital upon the face of the bonds. It is recited upon their face that the county commissioners issued the bonds in pursuance of an act of the general assembly of South Carolina passed in 1882 and amended in 1885, which act and the amendment to it did "empower certain counties and townships to issue bonds in subscription to the common stock of the Greenville & Port Royal Railroad Company, and that said township has subscribed for twenty thousand eight hundred dollars of the common stock of said company. In consideration thereof, and in conformity with the provision of said act, this bond, being one with others aggregating twenty thousand eight hundred dollars, is issued by the board of county commissioners for Abbeville county, state of South Carolina, who, in testimony whereof, and by authority of said act, have officially executed this bond, and caused the same to be countersigned by their clerk, and the seal of the said county of Abbeville to be hereunto affixed," etc. It appears further from the evidence that the plaintiff became the purchaser of 37 bonds, numbering from 1 to 37, both inclusive, and that he paid full value for them, without notice of any defect or irregularity in their issue, and that he was, at the commencement of this action and at the date of the judgment, the legal holder and owner thereof. It will be observed from the inspection of these bonds that their recitals show upon the face of the bond a compliance with the law under which they were issued. The purchaser had a right to assume that all the conditions of the law were complied with authorizing the issue of the bonds. The question whether they were issued in compliance with the law was a question that properly belonged to the authorities, who were authorized by the acts of the legislature to issue the bonds. There is no evidence in this case that at the time of the sale of these bonds to the holder he had any notice whatever of any irregularity concerning them, and, such being the case, and being a purchaser without notice of irregularity, and for a valuable consideration, we hold that the township of Ninety-Six was estopped from setting up a defense of the character set out in its pleadings.

This same question has been the subject of review in the supreme court of the United States in many cases, commencing with the case of Commissioners of Knox Co. v. Aspinwall, 21 How. 539, a case very similar to the one under consideration, in which the great contention was that a majority of the qualified voters of said county had not had an opportunity to vote for the subscription to the railroad stock, which the statute required. In that case it was insisted that this irregularity or omission to give the notices required by the statute, in order that a vote might be taken upon the question of subscription to the stock of a railroad, had the effect to deprive the board of its authority; but the court held that, while this fact might exist, it was a fact that should have addressed itself to the consideration of the board that issued the bonds; yet, inasmuch as

they had issued the bonds, and certified that the law had in every respect been complied with, that the issue of the bonds could not be attacked in any collateral way, and that it was for the board alone to determine whether or not the election had been properly held, or whether there had been a majority of the votes of the county cast in favor of the subscription. This principle, from that date down to the present, has been affirmed in numerous cases cited in the brief of the appellee in this cause; and as late as the case of Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, the court held that a recital in a series of bonds issued by a municipal corporation in payment of its subscription to the stock of a railroad company, if they were issued in pursuance of an act of the legislature and ordinances of the city council passed in pursuance thereof, does not put a purchaser upon inquiry as to the terms or conditions under which the bonds were issued. This question has been so repeatedly settled by the supreme court of the United States, and the doctrine announced in this opinion so frequently affirmed, that we see no reason for entering into an extended discussion of it. It is apparent from the direction given to the jury by the learned judge who presided at the trial of the cause that he considered that the question of estoppel was the vital one in it, in which we concur, and therefore we find no fault in his direction. Judgment affirmed.