Ex parte FOLSOM et al.

FOLSOM v. NINETY-SIX TP. et al.

(Circuit Court, D. South Carolina. July 28, 1904.)

1. RAILROAD—ISSUANCE OF BONDS—STATE STATUTES—CONSTITUTIONALITY—
OBLIGATION OF CONTRACTS—IMPAIRMENT.

Act S. C. 1882 (18 St. at Large, p. 216), chartering the G. & P. R. R. Co., authorized townships interested in such construction to subscribe for stock and issue bonds in payment therefor, and section 9 (page 217) thereof provided for the payment of interest on such bonds by authorizing the county auditor to assess and the county treasurer to collect such tax on the property of the township as should be necessary to pay such interest. By Act S. C. 1885 (19 St. at Large, p. 240) the former act was amended so as to provide that all counties and the townships in such counties along the line of such railroad or interested in its construction were created bodies politic and corporate, with necessary powers to carry out the provisions of the act, and subject to all liabilities growing out of the same, and the county commissioners of the respective counties were declared the corporate agents of the counties and townships so incorporated and situated within the limits of such counties. By constitutional amendment (23 St. at Large S. C. p. 1227), the state Constitution of 1895, art. 7, § 11, providing that the several townships of the state should constitute a body politic and corporate, etc., was amended so as to provide that such section should not apply to certain townships which had issued bonds in payment of stock in the railroad under the acts of 1882 and 1885, and that "the corporate existence of such townships be and the same is hereby destroyed and all officers of such townships are abolished and all corporate agents removed." *Held*, that such constitutional amendment was intended to impair the means provided by law for the payment of the bonds so issued, and to that extent was obnoxious to Const. U. S. art. 1, § 10, as impairing the obligation of contracts.

2. SAME—CONSTRUCTION.

Since the county auditor and treasurer, authorized by Act S. C. 1882 (18 St. at Large, p. 216) to levy and collect the tax for the payment of such bonds, were not officers or agents of the townships issuing the bonds in any sense, and the acts they were empowered to perform could be legally done independent of the corporate existence of the township, the abolition of the corporate existence of a township which had been organized as a corporation only for the purposes of the act did not deprive such officers of authority to levy the tax to pay such bonds issued by it.

3. SAME—BOUNDARIES OF TOWNSHIP—ALTERATION—EFFECT.

The fact that after the issuance of bonds under such acts the township issuing the same became a part of another county by means of a change in the boundaries of certain counties was immaterial, since the township's obligation to pay the bonds attached to the territory included in the township which issued the bonds, and passed with such territory into the county to which it was added.

At Law.

Shields, Cates & Montcastle and H. J. Haynsworth, for petitioners.
J. B. Pork and F. B. Grier, for respondents.

PRITCHARD, Circuit Judge. This is an application for a writ of mandamus to compel the auditor and treasurer of the county of Greenwood to assess and collect a judgment recovered against the township of Nintey-Six for certain bonds issued by it in aid of a railroad company. By an act of 1882 the Legislature of South Carolina chartered

the Greenville & Port Royal Railroad Company. Sections 6 and 8 of this act authorized cities, towns, townships, and counties interested in the construction of railroads to subscribe to the capital stock of said railroad company, and to issue bonds in payment thereof. 18 St. at Large S. C. pp. 216, 217. Section 9, as a means of paying the bonds, provided as follows:

"That for the payment of interest on such bonds as may be issued by the said counties, cities, towns or townships, the county auditor or other officer discharging such duties, or the city or town treasurer, as the case may be, shall be authorized and required to assess annually upon the property of such city, town, county or township such per centum as may be necessary to pay said interest of said sum of money subscribed, which shall be known and styled in the tax book as said railroad tax, which shall be collected by the treasurer under the same regulations as are provided by law for the collection of taxes in any counties, cities, towns or townships so subscribing and which shall be paid over by the said treasurer to the holders of said bonds as the said interest shall become due, on presentation of the coupons, which said coupons shall be reported to the county commissioners by the said treasurer, or to the council of any city or town where there are coupons from bonds of such city, or town, and all said coupons shall be cancelled by the county treasurer as soon as they are paid by them." Page 217.

In 1885, an amendatory act was passed in which the name of the railroad company was changed, and other alterations and changes were made, which do not concern the question at issue in this case. This act also amended the act of 1882 by adding the following provision to section 9:

"That for the purpose of this act, all the counties and the townships in said counties, along the line of the said railroad, or which are interested in the construction as herein provided for, shall be, and they are hereby declared to be bodies politic and corporate, and vested with the necessary powers to carry out the provisions of this act, and shall have all the rights and be subject to all the liabilities in respect to any rights or causes of action growing out of the provisions of this act, the county commissioners of the respective counties are declared to be the corporate agents of the counties or townships so incorporated and situate within the limits of the said counties." 19 St. at Large S. C. p. 240.

This provision designates the county commissioners of the respective counties as the corporate agents of the counties and townships so incorporated, and clothes them with power to issue bonds in such amounts as may be authorized by the voters of the respective territories in the manner therein prescribed. In accordance with the provisions of this section, the people of the township, at an election held for that purpose, declared in favor of the issue of bonds in aid of the construction of the railroad, and the county commissioners of Abbeville county, in the spring of 1886, under the authority conferred upon them by the Legislature, issued the bonds of the township in the amounts stated in the petition. These bonds were sold to innocent purchasers for value, and for two years the taxes were regularly assessed and collected, and the interest upon the bonds was promptly paid. In November, 1888, the Supreme Court of South Carolina, in the case of Floyd v. Perrin, reported in 30 S. C., at page 1, 8 S. E. 14, 2 L. R. A. 242, held that under the statutes of 1882 and 1885 the township of Ninety-Six was created a corporation, but without any corporate purpose, and that the section of the act which undertook to authorize the issue of bonds was uncon-

131 F.—32

stitutional, and the township bonds were invalid. For 10 years prior to this decision a number of similar acts had been passed by the Legislature of the state in pursuance of which township bonds were issued in aid of railroads, and placed upon the market, and until the decision in the case supra there had been no question or doubt as to the validity of these bonds. At the next session of the Legislature an act was passed declaring that, when the railroad had been completed through the township, the township bonds issued in aid thereof should be paid by taxation as provided in the original act. 20 St. at Large S. C. p. 12. This statute was held to be constitutional, and that a mandamus could be issued by that court to compel the collection of this tax. State v. Whitesides, 30 S. C. 579, 9 S. E. 661, 3 L. R. A. 777; State v. Harper, 30 S. C. 586, 9 S. E. 664; State v. Neely, 30 S. C. 587, 9 S. E. 664, 3 L. R. A. 672. The decisions in these cases practically settled the question in so far as the townships were concerned through which the railroad had been completed, and the interest was paid without further contest. On the other hand, the bonds of the townships through which the railroad had not been completed were not paid. On the 10th day of February, 1893, George W. Folsom brought suit against township Ninety-Six upon certain coupons clipped from its bonds. A demurrer was filed in behalf of the township, and Judge Simonton, in an opinion dated December 27, 1893, sustained the demurrer and dismissed the complaint. This case was carried to the Circuit Court of Appeals, and that court certified certain questions of law to the Supreme Court of the United States. The Supreme Court, in the fall of 1885, rendered a decision, which is reported in 159 U. S., at page 611, 16 Sup. Ct. 174, 40 L. Ed. 278, in which it is held that the decision in Floyd v. Perrin, having been rendered subsequently to the issue of the bonds in question, was not binding on the federal courts, and, considering the question upon its merits, the court held the statute was constitutional, and the bonds were valid, unless there was some other defense. The demurrer was overruled, and the defendant was allowed to file an answer. When the case came on for trial in the Circuit Court it resulted in a verdict for the plaintiff. The case was carried to the Circuit Court of Appeals, and the judgment below was affirmed. Ninety-Six Township v. Folsom, 30 C. C. A. 657, 87 Fed. 304. In the meantime other cases had been instituted against various townships, and judgment was obtained against the township in each case. A writ of error was sued out in one of them, and the judgment below was affirmed. Dunklin Township v. Wells, 31 C. C. A. 593, 87 Fed. 1004. These decisions terminated the litigation of this class of cases on the merits. In 1897 and 1899 acts were passed by the Legislature forbidding township commissioners, county commissioners, and all other officers from assessing any tax to pay these bonds, and forbidding the county treasurer and all other officers from collecting such tax. 22 St. at Large S. C. p. 534; 23 St. at Large S. C. p. 78. After these statutes were enacted, the auditor and treasurer declined to levy and collect the taxes as required by the statutes of 1882 and 1885, and the plaintiff in one of the cases filed a petition for a writ of mandamus. Judge Simonton, who delivered the opinion in Hicks v. Cleveland, 45 C. C. A. 429, 106 Fed. 459, among other things, said:

· "The purpose of the General Assembly in passing the act to amend the charter of the Greenville & Port Royal Railroad Company, approved December 24, 1885 (19 St. at Large S. C. p. 237), was to promote the construction of that road. To accomplish this, it authorized and encouraged townships along the proposed line of road to subscribe bonds towards this construction. In order to give character and credit to these bonds, and to induce the public to invest in them, the ninth section of the act provides a careful, full, and sure mode of providing for the interest. And an amendment to the same charter, made in 1887, provided (19 St. at Large S. C. p. 921) in the same way for the payment of the principal by taxation. These provisions of the act went into and formed a part of the contract moving to the bondholders, who invested their money trusting to the provisions. The contract could not be impaired by any subsequent act on the part of the state of South Carolina."

In this opinion Judge Simonton held that the acts of the Legislature which undertook to prevent the collection of the taxes in accordance with the provisions of section 9 of the acts of 1882 and 1885 were unconstitutional, and the judgment of the lower court directing the issuance of the writ of mandamus was affirmed. In the fall of 1891 an application was filed in the Supreme Court of South Carolina in behalf of certain taxpayers in the township of Dunklin, in which that court was asked to enjoin the county auditor and treasurer from levying and collecting the tax to pay the judgment which had been rendered. That court, on the 16th day of April, 1892, rendered its decision, in which it was held that a mandamus was in the nature of an execution to enforce a judgment of the federal court, and, among other things, it declared this "was an end of the argument, as it cannot be contended that a state court can enjoin any process of a federal court." McCullough v. Hicks, 63 S. C. 542, 41 S. E. 761.

Section 11 of article 7 of the Constitution of 1895 provided:

"Each of the several townships of this state, with names and boundaries as now established by law, shall constitute a body politic and corporate, but this act shall not prevent the General Assembly from organizing other townships or changing the boundaries of those already established; and the General Assembly may provide such system of township government as it shall think proper in any and all the counties, and may make special provision for municipal government and for the protection of chartered rights and powers of municipalities."

The following amendment to this section was proposed by a concurrent resolution of the Legislature of February 28, 1902:

"That this section shall not apply to the following townships in the following counties: Dunklin and Oaklawn in the county of Greenville; the townships of Cokesbury, Ninety Six and Cooper in the county of Greenwood; Sullivan in the county of Laurens; Huitt and Pine Grove in the county of Saluda. The corporate existence of the said townships be, and the same is hereby destroyed, and all officers in said townships are abolished and all corporate agents removed." 23 St. at Large S. C. p. 1227.

This amendment was voted upon favorably at a general election held in November, 1902, and in February, 1903, was adopted by the General Assembly by a concurrent resolution. Thus it became a part of the Constitution of South Carolina.

The petition upon which the writ of mandamus is based is as follows:

"That George W. Folsom, the plaintiff in the above-entitled cause, was a citizen and resident of the state of Tennessee, and the defendant a territorial division of the state of South Carolina, situate formerly in the county of Ab-

beville, but now included within the county of Greenwood under and by virtue of the laws of said state, and was incorporated under an act of the General Assembly entitled 'An act to charter the Greenville & Port Royal Railroad Company,' approved December 23, 1882, amended on December 24, 1885, by an act entitled 'An act to amend an act entitled "An act to charter the Greenville & Port Royal Railroad Company." '

"That on February 10, 1893, the said George W. Folsom brought his action in this honorable court, entitled 'George W. Folsom v. Township of Ninety-Six in the County of Abbeville, S. C.,' alleging, among other things, that the defendant, through its corporate agents, had, on March 25, 1886, duly executed and issued bonds of said township aggregating twenty-eight thousand dollars, with attached interest coupons at the rate of seven per cent. per annum, and of the denominations specified in said bonds, and that said George W. Folsom had purchased certain of said past-due coupons clipped therefrom, amounting in the aggregate to the sum of five thousand one hundred and ten dollars, being specifically set forth in said complaint, and alleging that no part of said coupons had been paid, and that defendant and its agents had refused and neglected to collect said taxes for the payment of said coupons and interest, and demanding judgment to the amount of said coupons, together with interest thereon, and for the cost of said action, and for the issue of a writ of mandamus directed to the proper officers to levy and collect taxes to pay said coupons.

"That, said action being pending, a verdict was rendered in favor of the plaintiff for the sum of seven thousand one hundred and eighteen and $78/100$ dollars and for one hundred ninety-three and $15/100$ dollars on August 14, 1896. The judgment was duly entered thereon and execution issued on August 28, 1896, and the same was lodged in the office of the marshal for said district, but said execution has been returned wholly unsatisfied, and no part of the said judgment has been paid, and the full amount is now due and payable.

"That by the act of the Legislature under which said bonds were issued it was provided: 'Sec. 9. That for the payment of the interest on such bonds as may be issued by said counties, cities, towns, or townships, the county auditor or other officer discharging such duties, or the city or town treasurer, as the case may be, shall be authorized and required to assess annually upon the property of the said county, city, town or township, such per centum as may be necessary to pay the said interest of said sum of money subscribed, which shall be known and styled in the tax books as said railroad tax, which shall be collected by the treasurer under the same regulations as are provided by law for the collection of taxes in any of the counties, cities, towns or townships so subscribing, and which shall be paid over by the treasurer to the holders of said bonds as the said interest shall become due on presentation of the coupons,' etc. 19 St. at Large S. C. p. 240.

"That at the time of the execution of the said bonds said township was situate in Abbeville county, but that thereafter, to wit, in the year 1896, the county of Greenwood was organized, in pursuance of the laws of said state, out of portions of Abbeville and Edgefield counties, and the township of Ninety-Six was included in the county of Greenwood.

"That demand has been made upon the proper officers of Greenwood county to assess and collect taxes for the payment of said judgment, but said officers have neglected and failed to make such assessment.

"That since said bonds have been executed the Legislature of said state has passed several acts forbidding under heavy penalty the levy and collection of taxes for the payment of said township bonds.

"That said acts are in violation of section 10 of article 1 of the Constitution of the United States of America, but the officers charged with the duty of levying and collecting taxes to pay said bonds have obeyed the mandate in said acts, and have failed to assess or collect taxes. That petitioner is advised and believes that any further effort to procure voluntary action on the part of said officers would be idle, and without effect. That the auditor for Greenwood county is T. A. Graham, and the treasurer of said county is J. A. Marshall.

"That petitioners are now the owners of said judgment, and all moneys due thereon are payable to them.

"Wherefore your petitioners pray:

"(1) That a writ of mandamus be issued directed to said auditor and said treasurer directing and demanding the said auditor to assess upon all property

of said township a sufficient per centum to pay said judgment, with costs, and commanding the treasurer of said county to collect the taxes so assessed, and pay over the same upon the said judgment until the same be wholly satisfied.

"(2) For the costs of this proceeding, and for such other and further relief as in the premises may be just."

The auditor and treasurer of Greenwood county, for their return to the rule to show cause, submit the following answer:

"T. A. Graham, as auditor of the county of Greenwood, and J. A. Marshall, as treasurer for the same county, for return to the rule to show cause why the writ of mandamus should not issue requiring these respondents respectively to assess and collect a tax as prayed for by the petition in the cause why such a writ should not issue before this court, respectfully show:

"(1) That the respondents admit the allegations of paragraph one except the allegations thereof which allege that Ninety-Six township is a subdivision of the state of South Carolina, and is now included in Greenwood county, which allegation is denied.

"(2) That respondents deny any knowledge or information sufficient to form a belief as to the matters contained in paragraph two of the said petition.

"(3) That neither of said respondents have knowledge or information to form a belief as to the allegations of paragraph three of the said petition, and deny any knowledge or information sufficient to form a belief as to the allegations of said paragraph three, and require strict proof of the same.

"(4) Respondents admit the allegations of paragraph four of the petition.

"(5) Respondents admit the allegations of paragraph five, except that they allege that Greenwood was formed in 1897 under the provisions of the Constitution of 1895.

"(6) Respondent T. A. Graham admits demand upon him to assess said tax, and that he refused to do so, and alleges that he had no power so to do.

"(7) Respondents admit the allegations of paragraph seven of the petition.

"(8) Respondents admit the allegations of paragraph eight of the petition, except the allegations that allege that said acts are in violation of the Constitution of the United States of America, which allegation is denied.

"(9) That these respondents further show and submit that neither of them is an officer of the county of Greenwood, nor the agent, under the law of the state of South Carolina, of either the holders of township bonds or the townships themselves. They are officers of the state of South Carolina, appointed by the Governor of the said state under the provisions of law, and, although termed county officers, are so styled because assigned to duty in that county; and they therefore submit they cannot exercise any function of these respective officers except as authorized by the laws of the said state.

"(10) That the General Assembly of the said state, by its act approved on ―――― day of ――――, 190–, and now of force, has forbidden the respondents and all other like officers to assess or collect a tax for the payment of subscriptions by townships to the building of railroads which have not been built.

"(11) That the railroad, for the building and construction of which the bonds alleged in the said petition to have been issued, has not been built.

"(12) That the township of Ninety-Six, described in the said petition, does not exist as a corporation, because by an amendment of the Constitution of the state of South Carolina voted by the people in the year 1902, and adopted by the General Assembly of the said state in the year 1903, the corporate existence of the said township was destroyed, and all officers in said township abolished, and all corporate agents removed long prior to the petition herein.

"(13) That the said township of Ninety-Six never owned any property whatever; that it never had any officers or agents of its affairs with the single exception that the county commissioners of the county of Abbeville were authorized to hold an election for the subscription of bonds described in the petition, and to issue bonds for the amount to be subscribed.

"(14) That respondents are officers under and by virtue of the provisions of the Constitution of 1895 and the law pursuant thereto, which fixes and determines their duties and power, and under the terms and provisions of the said Constitution and the acts of the Legislature pursuant thereto these respondents are without power to levy or collect any tax for the purpose set out

in the said petition, and are forbidden by the express terms of the said Constitution from so doing, under which said Constitution they hold their appointment as officers of the state of South Carolina; that these respondents are required to give a heavy bond conditioned to faithfully discharge and perform the duties of their office in accordance with the requirements of the law of their appointment, which prohibits and forbids doing the acts mentioned in the petition herein.

"(15) The respondents further submit that section 9 of the act incorporating Ninety-Six township does not make it the duty of the county auditor and county treasurer to assess and collect any tax whatever. It provides in plain terms that the said auditor and treasurer shall be authorized and required to assess and collect a certain tax mentioned therein on the property owned by the township, and it makes no provision whatever for an assessment of the property or fixing the valuation for taxation of any property within the said territory and could not so provide, this matter being regulated and fixed by the Constitution of 1868, which makes it incumbent on the Legislature to provide a regular way applicable alike to all counties for said purpose.

"(16) That at the time the bonds and coupons mentioned in the petition herein are alleged to have been issued the township of Ninety-Six was a territorial subdivision of the county of Abbeville, and whatever duty was imposed on the county auditor and treasurer had reference entirely to those officers acting for Abbeville county, and Abbeville county is still in existence, and still has a county auditor and county treasurer; that the respondents are the county auditor and county treasurer, respectively, for Greenwood county, which was formed under the provisions of the Constitution of 1895 and acts of the Legislature of 1897, and they are not officers or agents of Ninety-Six township for any purpose whatever, and are not officers or agents of the holders of the said bonds or judgment mentioned in the petition, and have no desire to act as such officers or agents; that they can and do exercise the duties of county auditor and county treasurer, respectively, in compliance with the law of the state under which they were appointed and commissioned, without reference to any duty or obligation of what was known as Ninety-Six township as a township, and in accepting the office of county auditor and county treasurer they did so under the laws then in existence and of force and afterwards to be enacted, fixing their duties and defining their power, and not as officers or agents of the said township, which position each of them declines to accept and exercise.

"Wherefore, because it is doubtful that the petitioner ever obtained the alleged judgment, and because it is impossible for the respondents to determine what property is subject to taxation on account of the demand alleged to be in judgment, and because the respondents do not possess or control any property ever belonging to the said township, and because the said county of Greenwood never succeeded to any right of property of the said township, and because the collection of the taxes prayed for is beyond the scope of authority and duty of the respondents, and because the said respondents cannot, under the law of their appointment, comply with the writ without violating their oath of office and the law appointing them, and because the township of Ninety-Six has no corporate existence, agents, or officers, and for the other good and sufficient reasons shown herein, they pray that the said rule be discharged."

From an examination of the record it will be seen that every question in this litigation from its inception has been settled by former adjudications, except such questions as may have arisen by virtue of the constitutional amendment which was adopted in 1903. Such being the case, we are to consider, first, the question whether the legal entity of the township of Ninety-Six has been abolished; second, and, if it shall appear that the corporate existence of the township has been abolished, what is the effect of the acts of 1882 and 1885, which provide the means for the assessment and collection of the taxes to pay the interest and principal of the bonds? The language of the statute of 1885 is so plain and direct that there can be no question as to its meaning. It provides in plain and unmistakable terms the means as well as the mode of pro-

cedure by which the taxes in question are to be assessed and collected. The county auditor and treasurer are designated by the Legislature as the instrumentalities by which the bondholders are to be afforded a remedy. Its provisions which relate to the assessment and collection of the tax are a part of the conditions of the contract which induced the bondholders to invest their money, and cannot be destroyed by any legislative acts passed subsequent to the issue of the bonds in pursuance of former acts of the Legislature. "By the obligation of a contract is meant the means which, at the time of its creation, the law affords for its enforcement." Nelson v. Police Jury of St. Martin's Parish, 111 U. S. 720, 4 Sup. Ct. 648, 28 L. Ed. 574. "The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced, by which the parties can be obliged to perform it." Louisiana v. New Orleans, 102 U. S. 206, 26 L. Ed. 132. It cannot be doubted that the constitutional amendment of 1903 was intended to impair the means provided by law for the payment of these bonds. To this extent it is obnoxious to article 1, § 10, of the Constitution of the United States.

Mr. Justice Swayne, in delivering the opinion of the court in Walker v. Whitehead, 16 Wall. 317, 21 L. Ed. 357, said:

"The Constitution of the United States declares that no state shall pass any 'law impairing the obligations of contracts.' These propositions may be considered consequent axioms in our jurisprudence: The laws which exist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it. This embraces alike those which affect its validity, construction, discharge, and enforcement. Nothing is more material to the obligation of a contract than the means of enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guarantied by the Constitution against impairment. The obligation of a contract 'is the law which binds the parties to perform their agreement.' Any impairment of the obligation of a contract—the degree of impairment is immaterial—is within the prohibition of the Constitution. The states may change the remedy, provided that no substantial right secured by the contract is impaired. Whenever such a result is produced by the act in question, to that extent it is void. The states are no more permitted to impair the efficacy of a contract in this way than to attack its vitality in any other manner. Against all assaults coming from that quarter, whatever guise they may assume, the contract is shielded by the Constitution. It must be left with the same force and effect, including the substantial means of enforcement, which existed when it was made. The guaranty of the Constitution gives it protection to that extent. The effect of these propositions upon the judgment before us requires but a single remark. A clearer case of a law impairing the obligation of a contract, within the meaning of the Constitution, can hardly occur."

The attempt to abolish the township and destroy the machinery for taxation, and to transfer the territory to another county, is a direct attack upon the remedy which is given the petitioner by the acts which authorized the issuance of the bonds, and the fact that the attempt is made by constitutional enactment does not give it any additional force.

The provisions of the acts of 1882 and 1885 which relate to the assessment and collection of taxes are a part of the conditions of the contract which induced the bondholders to invest their money, and this contract cannot be impaired. The authority for an annual tax for the payment of the bonds being granted by the Legislature at the time of the issuance of the same, cannot be revoked by the Legislature, unless

some other remedy equally as efficacious is provided as a substitute. In the case of Hicks v. Cleveland, 45 C. C. A. 429, 106 Fed. 459, Judge Simonton, in discussing this phase of the question, said:

"The Supreme Court of the United States deals with the provisions of statutes like this as creating a trust which the state, the donor, cannot annul, and which the officers to whom the power is given are bound to execute. So neither the state nor the corporation can any more impair the obligation of the contract by repeal of the act than they can in any other way."

Broughton v. Pensacola, 93 U. S. 266, 23 L. Ed. 896; Von Hoffman v. Quincy, 4 Wall. 553, 18 L. Ed. 403; Mount Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699.

If the payment of debts could be defeated by the means employed in this case, then there would be no security as to any contracts which the individual might enter into in cases wherein the power to contract is derived from legislative authority. The law does not contemplate that any one shall be permitted, directly or indirectly, to repudiate an honest obligation. The act of 1885, which vested the township with corporate functions, was passed solely for the purpose of this contract, and as such was intended to afford the bondholders a safe and sure remedy. It did not undertake to incorporate the township as a general municipal corporation. It simply gave the township certain functions to be exercised solely and exclusively for the purpose of making and discharging the contract, and the provisions of the same thereby became a part of the essential elements of the contract, and do not in any wise partake of the character of the powers ordinarily conferred upon a township or other territory in order to enable such township or territory to exercise the functions of a municipal corporation. Therefore the constitutional enactment in question is not aimed at a municipal corporation, but is in the nature of a direct attack upon legislation which has for its object the enforcement of a contract.

No one questions the power of the Legislature at any time to abolish a municipal corporation, provided that in doing so it does not impair the obligation of a contract. But in this instance the acts in question do not have the effect of abolishing a municipal corporation as such, the constitutional and legislative enactments being directed against the means by which the holders of the bonds are to be paid the amounts due them.

In the case of Von Hoffman v. Quincy, 4 Wall. 553, 18 L. Ed. 403, among other things, Mr. Justice Swayne, who delivered the opinion of the court, said:

"It is competent for the states to change the form of the remedy or to modify it otherwise, as they may see fit, provided that no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy which are to be deemed legitimate and those under the form of modifying the remedy impair substantial rights. Every case must be determined upon its own circumstances. Whenever the result last mentioned is produced, the act is within the prohibition, and to that extent void."

We now come to consider the question as to whether the means provided as a remedy are in any way connected with that part of the act which confers corporate powers upon the township. If the contention that the Legislature had the right to destroy the corporate existence

of the township be true, we are nevertheless confronted with the fact that the instrumentalities and means employed by the Legislature in this instance for the purpose of enforcing the collection of a tax are still unimpaired. The duties of the officers designated for the assessment and collection of taxes are not affected in any manner by the acts which undertook to abolish the township. In other words, even though it should be held that the township as a corporate entity no longer exists, however, the remedy which is provided for the collection of taxes remains unimpaired. Therefore, if the contention of respondents that the township is abolished be correct, then we have the act which makes the levy and authorizes the assessment and collection of taxes in a certain territory for the payment of an indebtedness evidenced by bonds upon which judgment has been obtained in a regular manner; the instrumentality for its collection remains the same as when the act in question was passed. The county auditor and treasurer are not officers or agents of the township in any sense of the word. Inasmuch as the acts of 1882 and 1885 constitute the county commissioners the corporate agents of the township, and at the same time authorized the county auditor and treasurer to perform duties incident to the assessment and collection of taxes that are separate and distinct from those assigned to the county commissioners, it cannot be contended that the Legislature intended to authorize the auditor and treasurer to act as agents of the township. The act provides that the county commissioners shall be the agents of the township, and clothes them with discretionary power, to wit, the power to issue bonds when certain conditions have been complied with. The power which was conferred upon them has been exercised by the issuance of the bonds, and, since they have performed the duties incumbent on them as agents of the township, they are powerless to do anything further in the premises. It is different when we come to consider the authority which was conferred on the county treasurer and auditor by the Legislature. While the duties of the county commissioners were simply to issue the bonds and deliver the same, the county auditor and treasurer are authorized and empowered to do that which may be lawfully done independent of the corporate existence of the township.

In this case a judgment has been obtained, and the liability of the township for the payment of these bonds judicially determined. The court is now called upon to enforce the laws of the state existing at the time of the execution of the bonds, the provisions of which enter into and constitute an essential element thereof. Conceding that the constitutional enactment is valid, and that it has had the effect to abolish the corporate existence of the township, we cannot escape the conclusion that the means and procedure provided for the enforcement of the contract remain unaltered. The officials chosen by the Legislature as instrumentalities for the assessment and collection of the tax are in existence, and it is the duty of the court to compel the enforcement of the same, irrespective of the result of any attempt which may have been made to abolish the township. It is contended by the respondents that the territory of township Ninety-Six as a subdivision of the county of Abbeville no longer exists as such, and that the same has been trans-

ferred and embraced as a part of one of the territorial subdivisions of the county of Greenwood, and therefore the court is without authority to compel the auditor and treasurer of the new county to enforce the assessment and collection of the tax in the territory which formerly was included in the county of Abbeville. This position is untenable, and cannot be sustained. The creation of the new county of Greenwood and the transfer of the territory of township Ninety-Six to said county as a part of its territory do not alter the status of the territory thus transferred in so far as it is affected by the acts of 1882 and 1885, which provide that the county auditor and treasurer shall assess and collect annually a tax upon the property included in said territory. It has been repeatedly held that, where a subdivision of the state has contracted a debt, such debt follows the people of the newly acquired territory. In cases where an indebted municipality is divided among other municipalities, the debt follows the territory, and the duty of assessing and collecting taxes applies to the new officers in whose jurisdiction it comes. Broadfoot v. Fayetteville, 124 N. C. 478, 32 S. E. 804, 70 Am. St. Rep. 610; Mobile v. Watson, 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620.

Counsel for respondent insist that it will work a hardship upon the property owners of the township to compel them to pay taxes to meet the obligations of the contract from which they can never realize any benefit. The unfortunate condition which the property owners now occupy is due in a large measure to the failure on the part of the Legislature at the time of the passage of the act to provide that the bonds should not be issued until the railroad had been completed through the territory in question. While the contention of the respondent as to the lamentable condition of the township is true, it is equally true that a failure on the part of the inhabitants of the township to comply with the obligations which they entered into at the time the bonds were issued will work a hardship on the owners of the bonds, who are innocent purchasers, and who are in no wise responsible for the issuance of the bonds in the first instance, nor for the failure of the railroad company to complete its road through the territory in question.

In view of the foregoing, it is ordered that a writ of mandamus issue directed to the said auditor and treasurer of the county of Greenwood, commanding the said auditor to assess upon the property in said township a sufficient per centum to pay said judgment and costs, and to continue to assess from year to year, and commanding said treasurer of said county to collect such tax so assessed, and pay over the same upon said judgment until the same is wholly satisfied.